WILLIAM T. DENNIS *et al.*, caveators, plaintiffs in error, *vs.* WILLIAM J. WEEKES, propounder, defendant in error.

1. On the investigation of an issue of *devisavit vel non*, where one of the grounds of the caveat is, that the executor did, by fraud and deceit, and fraudulent and false representations, procure the testator to make the will, the admission of the executor, who takes an interest under the will, made after qualification, in reference to the conduct or acts of the executor himself, as to a matter relevant to the issue, (and his statement that he had procured the testator to make the will for certain purposes is such) should have been admitted as evidence in chief. The fact that such evidence was admitted in rebuttal to impeach the executor, who testified as a witness in favor of the will, is not the full measure of the rights of the caveators, and they are entitled to a new trial on account of the rejection of this testimony as evidence in chief.

2. Where one of the grounds of caveat is undue influence exercised by the executor of the testator, in procuring him to make the will, evidence showing that the executor, as agent of the testator in 1863 or 1864, applied to the Confederate conscripting officer to have a white man exempted from military service for the purpose of overseeing the plantation of the testator, on the ground that the latter was so unsound in mind as to be incapable of attending to his own business, is admissible as evidence in chief for what weight the jury may give to it, to show the executor's knowledge of the state of the testator's mind, where the evidence, with the exception of that of the executor himself shows that the executor exerted his influence over the testator (which was proved to be very great) to have the will made, and all the witnesses testify that the testator had been a man of very weak, if not entirely unsound mind for fifteen years before his death, which occurred in 1869.

3. Evidence which ought properly to have been offered in chief, but which was then omitted through inadvertence, if offered with the rebutting evidence, should be admitted if otherwise unobjectionable.

4. The paper in the handwriting of the executor, made in 1857, showing the amount of property in his hands as agent of the testator, was

proper evidence in chief, as tending to show the amount of interest taken by the executor under the clause of the will which relieved him from the payment of any balance that might be found due by him to the testator, other than that with which he is charged in the will, and should have been admitted with the rebutting evidence, where it was inadvertently omitted to be given in, in chief.

Caveat to will. Admission of executor. Undue influence. False representations. Evidence. Impeachment of witness. Before Judge JOHNSON. Talbot Superior Court. March Term, 1872.

William T. Dennis *et al.*, heirs-at-law of William Stallings, deceased, filed a caveat to the paper propounded as the will of said Stallings upon the following grounds, to-wit:

1st. That the paper propounded for probate by William J. Weekes as the last will of said William Stallings, is not the will of the said William Stallings, because when said Stallings signed said paper he was incompetent, from insanity and mental imbecility, to make a will.

2d. That he did not make said paper as his last will freely and voluntarily; but made the same in consequence of the undue influence and constraint which the said Weekes then exercised over him.

3d. That the said Weekes did, by fraud and deceit, and fraudulent and false representations, procure the said Stallings to make said will.

4th. That the said Weekes used fraudulent practices upon the fears, affections and sympathies of the said Stallings, and thereby procured him to sign said paper as his will.

The paper propounded as said will was as follows:

"STATE OF GEORGIA—TALBOT COUNTY :-
" *In the name of God, Amen.*

" I, William Stallings, of the county and State aforesaid, being of sound and disposing mind and memory, but being somewhat advanced in age, deem it right and proper to make, ordain, publish and declare my last will and testament, and after having had the same under contemplation

for several days, do hereby ordain, publish and declare this instrument of writing to be my last will and testament, hereby revoking and annulling all former wills or codicils heretofore made by me.

"Item 1st. I desire a decent burial, suitable to my circumstances and condition in life.

"Item 2d. At present I am owing but little, but should there be any debts due by me at the time of my death I direct that they be promptly paid.

"Item 3d. As my son-in-law, William J. Weekes, has had control of my papers and money, and as we have this day settled, and in which settlement he has exhibited and shown a list of paper amounting to $30,430 65, to which he has accounted for cotton and money to the amount of $7,995 40, making in the aggregate, now in his hands in paper and money, the sum of $38,426 05. Should there have been anything omitted in our settlement, I do hereby relieve him from the payment of the same, and do give the same to him.

"Item 4th. The above amount being so in the hands of William J. Weekes, and mostly in paper, it is my will and desire, and I do hereby give and bequeath unto my daughter, Virginia A. Stallings, on the terms and conditions hereinafter specified, one-half the same. Also, one-half all my other property, real and personal, of every kind and description ; all of which is to go into the hands of William J. Weekes, as trustee of my said daughter, for her sole and separate use, and not to be subject to the debts of any husband she may hereafter marry. Should she die without having or bearing any living child or children, then the said property so given my daughter Virginia A., is to become the property of my grandchildren, Julia J. Weekes, Mary Ann Weekes, and James H. Weekes, children of my daughter, Martha Weekes, deceased, said property not to be liable to the control of the husband of said Virginia.

"Item 5th. All the remaining portion of my estate being one-half of said effects, so in the hands of William J. Weekes, one-half of all my estate, real and personal, of every kind

and description, I give and bequeath unto my grandchildren, Julia J. Weekes, Mary Ann Weekes and James H. Weekes— the same to be equally divided between them; and I do hereby appoint said William J. Weekes guardian, to receive and control the property given to my said grandchildren.

"Lastly. I nominate and appoint as my executor, William J. Weekes, to execute this my will.

"In testimony whereof I have hereunto set my hand and seal, and have fully executed this my will.

   (Signed)

           "WILLIAM STALLINGS, [SEAL.]

"Signed, sealed, published and declared by William Stallings, as his last will and testament, in the presence of us, who have each subscribed the same at the request, and in the presence of the testator and of each other, this 10th May, 1867.                           " JOSEPH POU,
   (Signed)                       " T. H. PERSONS,
                                   " MARION BETHUNE."

The issue upon the caveat came on for trial in the Superior Court upon appeal from the Court of Ordinary, and resulted in a verdict establishing said paper as the last will and testament of William Stallings, deceased.

Caveators moved for a new trial upon the following grounds, to-wit:

1st. Because the Court erred in excluding the paper purporting to be a schedule of the solvent promissory notes of said William Stallings, in the hands of said William J. Weekes, as his agent, principal and interest being included to May 1st, 1857, said paper being offered in evidence by said caveators as tending to show the fraud and inaccuracy of the pretended settlement had between said Weekes, as agent, and said Stallings on the day of the execution and a short time before said pretended will was executed, and which is referred to in said pretended will. Caveators, before offering said paper in evidence, had proved by one William T. Dennis, that he found said schedule among the papers of

said William Stallings after his death, and that the paper was in the handwriting of said William J. Weekes.

2d. Because the Court erred in refusing to allow caveators to prove that said William J. Weekes, shortly after the death of said William Stallings, and after said will had been proven by said Weekes in common form, told William T. Dennis, the witness, that he, said Weekes, had procured said Stallings to make and execute said will in order to prevent a bastard child of Nancy Stallings, an idiot daughter of said William Stallings, from inheriting any portion of the estate of said William Stallings, it having been proven that said Nancy Stallings had died in 1866, and before the execution of said will.

3d. Because the Court erred in refusing to allow caveators to prove by the witness, Virginia Dennis, the admission of said William J. Weekes, executor, made after the death of said William Stallings, and after the probate of the will in common form, which admission was stated in the answer of said witness, as follows: "Mr. Weekes told me that he had my father to make a will, in order to protect his (my father's) estate from a third party, viz.: the illegitimate child of Nancy Stallings; that Mr. Forbes asked him if my father had made a will; Mr. Weekes told him 'No!' Mr. Forbes said he ought to make a will in order to protect his estate from the illegitimate child of Nancy Stallings. Mr. Weekes told me that he tried to get Mr. Forbes to go to my father and have him make a will; that Mr. Forbes refused to go, but said that he (Mr. Weekes,) was the proper person to go, whereupon, he (Mr. Weekes,) went to my father and made him make the will, in order to prevent this child from having an interest in the estate. Mr. Weekes said that if the will was broken the child of Nancy Stallings would be sure to come in for a share of the estate." This excluded testimony of William T. Dennis, and of Virginia Dennis, rejected as aforesaid, was afterwards, and in rebuttal of the evidence of said William J. Weekes, propounder, read to the jury by caveators to im-

peach the said William J. Weekes, the foundation to do so having been previously laid.

4th. Because the Court erred in refusing to allow caveators to prove by Irban A. Leonard, a witness, "that he was the enrolling officer of the Government of the Confederate States in the years 1863 and 1864, for the county of Talbot, and that as such officer it was his duty to grant details of overseers on plantations having twenty negro slaves working thereon, and when there was no white man residing thereon competent to manage the same; that said William J. Weekes, as the agent of said William Stallings at that time and for those years, made application to him as such officer for the detail of Clement C. Gholson to take charge of said plantation of William Stallings, for said years, on the ground that said Stallings was of unsound mind, and incapable by reason thereof, of managing said plantation and hands, which detail was granted by witness, on the grounds aforesaid; that said grounds were sworn to by said Weekes at and before the granting of said detail." It is admitted that afterwards and during said trial, and in rebuttal of the testimony of William J. Weekes, said testimony was admitted for the purpose of impeaching said William J. Weekes as a witness.

5th. Because the Court erred in the following ruling: " When said William J. Weekes was testifying for propounder on cross-examination, having been shown the said schedule of notes, swore that said paper was a return and schedule of promissory notes, made by him as agent of said William Stallings, in 1857; that the same was correct as therein stated, and after the propounder had closed, said caveators offered said paper as rebutting evidence, but the same was excluded on objection of propounder."

6th. Because the Court erred in the following ruling: "Marion Bethune, who wrote the will and was a witness to it, testified for the propounder, that he, Weekes and Stallings, were together in the house of the latter; that Weekes had an account book which he said contained a statement of what he owed Stallings, and showed an account covering

many pages of the book; that he, the witness, took from the book the added up aggregate of the notes of Stallings and of the pounds of cotton sold by Weekes for Stallings;" to which statement caveators objected, insisting that the books should be procured. The Court overruled the objection, and allowed the witness to testify that he had taken the amounts of the notes and of the pounds of cotton from said book, and had inserted them as thus taken in the will.

7th. Because the Court erred in the following charge to the jury: that "if they believed that William Stallings would not have made the present will unless Weekes had represented to him that if he did not make it the bastard child aforesaid would inherit a share of his estate, then they must find the will to be void;" caveators insisting that the charge ought to be, that "if the jury believed that Stallings would not have made any will unless such representations had been made to him by Weekes, then they must find the will to be void;" which last charge the Court refused to give.

8th. Because the Court erred in refusing to charge the following request: that "if two witnesses swore one way and one witness swore the opposite way, the two were to be believed before the one, if the witnesses were in other respects equal."

The motion for a new trial was overruled by the Court and plaintiffs in error excepted upon each of the grounds taken for a new trial, and assign error thereon.

B. HILL; HENRY L. BENNING; WILLIS & WILLIS, for plaintiffs in error, submitted the following brief: The sayings of Weekes to Mr. and Mrs. Dennis were admissible as evidence for all purposes. 1st. They were made after his qualification as executor: Code, sec. 2402. 2d. They related to his "conduct or acts" in "a matter relevant to the issue:" Code, sec. 2 402; 31 Ga. R., 683; *Idem.*, 692. As evidence for all purposes, they would have been worth more than as mere impeaching testimony. The admission of the evidence for all purposes would have put the *onus*

of the attack on Weekes; its exclusion put the *onus* on Dennis and wife. It is harder to prove a negative than an affirmative. The presumption is, that every man is entitled to credit: 19 Ga. R., 287. 3d. Leonard's evidence of Weekes' sayings ought to have been received. 1. Weekes was the agent of Stallings, and uttered them "in the business of his agency," and testator ratified them by accepting Gholson as his overseer: Code, sec. 2173. 2. Though the sayings were uttered before Weekes' qualification as executor, yet they related to "the conduct or acts" of Weekes himself as to testator's sanity, and his influence over him—matters directly in issue: Code, sec. 2402. 4th. The schedule ought to have been admitted: 25 Ga. R., 577; *Idem.*, 711; 24 *Idem.*, 384; 20 *Idem.*, 620; 18 *Idem.*, 709; 30 *Idem.*, 125; 27 *Idem.*, 100; 28 *Idem.*, 73; 27 *Idem.*, 475; 26 *Idem.*, 617. The schedule was, in rebuttal, to impeach Weekes, who swore that "he never tried to influence Stallings;" considered him "a man of extraordinarily strong ordinary mind." 5th. That some of the contents (the amount) got before the jury made no difference as to the right of having the whole paper admitted: 30 Ga. R., 494. 6th. The book from which Bethune took the amounts in the will should have been produced: 32 Ga. R., 141. 7th. The request, as to the credibility of witnesses, should have been given in charge: 10 Ga. R., 148. In equity, two witnesses overcome the answer of one defendant: Code, 3050. The canon and civil law, and law of the continent of Europe, require two witnesses: 1 Greenleaf's Evidence, sec. 260, note 2. This is an ecclesiastical cause.

M. H. BLANDFORD; E. H. WORRILL, for defendants.

MONTGOMERY, Judge.

The first question which I will consider in this case is, were the sayings of Weekes to Mr. and Mrs. Dennis properly rejected as evidence in chief? Weekes was the propounder of the will and a legatee under it, at least to the

extent of an acquittance in full for debts he may have incurred to the testator during his long management of his property, which seems to have been continuous from 1854 to 1869, in which last mentioned year the testator died. The facts of this case, so far as applicable to the admissibility of this evidence, are closely analogous to those in *Morris and wife vs. Stokes, administrator*, 21 *Georgia*, 552, where the same question arose, with the exception that the present case is stronger in favor of the admission of the evidence than that, in this: then the party charged with using undue influence, and whose declarations the caveators proposed to offer in evidence, was only a legatee, not the executor or propounder of the will, and indeed not even a party—except in so far as the propounder may have represented his interests. There, as here, the party admitted that he did procure the will to be made, but it was for the purpose of preventing the inheritance from taking a direction which it could not have taken, and which, in this case certainly Weekes must have known it could not take. The objection to the evidence in 21 *Georgia* seems to have been upon the ground that the legatee, whose sayings it was proposed to admit, was neither the propounder, nor even a party. Judge Lumpkin says, on page 569, " we are called on, for the first time, to decide this question. It has become a settled rule of this Court that the admissions of the propounder of the will, who is also a legatee for a large amount, may be proven." Here Weekes is propounder, party and legatee. Whether he takes a large amount or not could be better known if his accounts had been before the Court. The presumption, however, is that he does, as he " made him (the testator) make the will," in the language of the witness, Mrs. Dennis, and however necessary it may have been, in his opinion, to have a will made for the purpose of disinheriting the bastard issue of a deceased idiot daughter of the testator, surely it was not necessary for that purpose to insert a clause exonerating himself from any liability he may have incurred in the management of the testator's property. If he had felt conscious that he

had incurred no liability, the exonerating clause would hardly have been inserted. This, of course, assumes the testimony of Mr. and Mrs. Dennis is true, to-wit : that Weekes made the testator make the will. The declarations of Weekes were excluded as general evidence on the ground (as we learn from the brief of counsel for plaintiff in error) that Weekes had no power to bind the legatees and, therefore, they were immaterial. But this very objection was made to just such evidence in a caveat to a will in *Harvey et al. vs. Anderson*, 12 *Georgia*, 69, and overruled. Judge WARNER, in delivering the opinion, says : " Were the admissions of Anderson, who was the propounder of the paper offered for probate, the nominated executor therein, and a legatee under the same, competent evidence for the consideration of the jury at the trial ? The general rule is, that the declarations of *a party to the record*, or of one *identified* in interest with him, are, as against such party, admissible in evidence, and this general rule, admitting the declarations of a party to the record in evidence, applies to *all cases* where the party has *any interest* in the suit, whether others are *joint parties* on the same side with him or not, and howsoever that interest may appear, and whatever may be its *relative amount.*

" The argument against the admission of this testimony is, that it will have the effect to enable a party to the record, who has a small legacy under the will, by fraud and corruption to make admissions which may destroy other legacies under it ten times greater than his own * * *.

" Although the other legatees, under the paper offered for probate, might have a larger interest under it than the propounder of it, who is a party to the record, seeking to establish it not only for his own benefit but for theirs also—still they are *identified in interest with him*, and the general rule of evidence is applicable to him and them."

But we think that section 2402 of the Code fairly covers the question under consideration and makes the testimony admissible. Here, then, is " an issue of *devisavit vel non,*" in which one of the grounds of caveat is, that the executor

did, by fraud and deceit, and fraudulent and false representa-
tions, procure the testator to make the will—he is both lega-
tee and executor. His admissions are made after qualifica-
tion. They purport to show that he procured the will to be
made by a false representation to the testator, to-wit: that if
it was not made his bastard grandchild would inherit.

The important part of the testimony of Mr. Dennis,
which was excluded as evidence-in-chief, is as follows :
"Weekes then said he went and told him (testator) he ought
to make a will to protect his estate against this illegitimate
child; and told him if he did not, the child would come in
for a part of the estate; and that Stallings acted on his rep-
resentations and made a will—that he, Weekes, suggested
the writer and the witnesses." This evidence certainly ful-
fills the remaining requirement of the section—it is relevant
to the issue—which is, did Weekes, by false representations,
induce the testator to make the will ? And I will state
here, lest I forget it, the weight of the evidence shows that
the testator was, at the time of making his will, and had
been for some fifteen years or more prior to his death, of
very weak mind, (indeed it is very doubtful whether he was
sane,) and entirely under the influence of Weckes. Under
such circumstances much less evidence will be sufficient to
set aside a will on the ground of undue influence than if the
testator were in full possession of all his faculties: 1 Jarman
on Wills, 37 to 42. And hence the importance, in such
cases, of submitting to the jury evidence like that under
consideration. In this connection, it may be well to state
that Weekes' own testimony shows his was the dominant
mind in the management of the business of Stallings—for
when the latter drew a draft upon him for $3,000 in favor
of his other son-in-law, he, Weekes, according to his own
testimony, refused to pay it, and then persuaded Stallings to
acquiesce in the refusal upon the ground that he was getting
old and his children might desert him.

We think the evidence was clearly competent. Does the
admission of it, for the purpose of impeaching Weekes, give

the caveators the full measure of their rights? As impeaching testimony, it could legitimately have but a negative effect, so far as the issues made by the caveat are concerned. It simply tended to prevent Weekes' evidence from proving the falsity of the charges made by the caveat, and the jury could only consider it for one purpose, to-wit: to ascertain whether Weekes was worthy of credit or not. " The legitimate object of the proposed proof is to discredit the witness:" 2 Brod. and Bing., 313. I have shown, I think, that, as evidence in chief, it was important as tending to establish, affirmatively, the truth of one or more of the charges made by the caveat.

2. We also think the evidence of the Confederate conscripting officer, Leonard, was improperly rejected as evidence in chief. The evidence admitted upon the point of the influence of the executor in having the will made, (the depositions of Ellen Hill,) as well as the evidence on this point, which we hold was improperly rejected as evidence in chief, (the declarations of the executor to Mr. and Mrs. Dennis,) tends to show that the executor did exert influence to have the will made. And this is not contradicted by any one but himself; even one of the subscribing witnesses, who was draftsman of the will, states that " Weekes seemed very anxious about it." In view, then, of the evidence that was admitted, and of that which we hold ought to have been admitted, tending to show the influence of the executor in procuring the will to be made, we think that evidence, showing a knowledge on the part of Weekes of the weak state of the testator's mind, was legitimate for the consideration of the jury as evidence in chief, to have more or less weight, as they may or may not believe that weak state of mind to have continued up to the time of making the will. If, at that time, the testator was so unsound in mind as to be incapable of attending to his own business, which the executor knew, and the latter exerted his influence over him, which was shown to be very great, to induce him to make a will very much in his (the executor's) own favor, it would be difficult to see how the jury could re-

fuse to set the will aside, if they believed the witnesses who swore to such facts. The tendency of this evidence is to bring the case within the principle laid down in Martin vs. Teague, 2 Speers, 268, as quoted by Mr. Jarman, (1 volume, 39,) to-wit: "That undue influence, to avoid a will, must be a control *intentionally* exercised by one mind over the will of another, so as to deprive the other of the free agency of option;" though, perhaps, any influence which *took away the free agency* of the testator would invalidate his will. If the testator is not a *free agent,* the paper can hardly be called *his will.*

3. It seems to have been conceded that the paper in the handwriting of the executor, and made in 1857, was good evidence *in chief to show* the amount of the testator's property, at that time in the hands of Weekes, as his agent, and as evidence going to ascertain what amount of interest he took under the will. It was ruled out, however, because not offered before the propounder had closed and the caveators were tendering evidence in rebuttal, the Judge holding that it came too late. The case of *Rolfe vs. Rolfe,* 10 *Georgia,* 143, and more especially that of *Parker vs. Johnson,* 25 *Georgia,* 576, would seem to entitle the caveators to introduce the evidence at the time it was offered. It was, therefore, error in the Court to reject it.

Judgment reversed.