Dennis and wife *vs*. Weekes.

POE, HALL & LOFTON, for plaintiff in error.

E. G. SIMMONS; PEEPLES & HOWELL, for defendants.

---

WILLIAM T. DENNIS AND WIFE, plaintiffs in error, *vs*. WILLIAM J. WEEKES, defendant in error.

1. A witness may give his opinion of the sanity of a testator, if he state the facts on which that opinion is founded.

2. Under this rule, the opinion of the witness Peek, as to the condition of testator's mind when he last saw him, was admissible, for he gives the facts on which he rests that opinion. The same may be said of the opinion expressed by caveatrix in her testimony.

3. But this does not entitle the witness to give an opinion " that testator was in a condition to be easily influenced," or " that he seemed to be under the influence of W. altogether," or to state, " he cannot say what the full influence of W. was, although he (the testator) seemed to be obedient to the commands of W." The witness should give the facts on which these statements were based.

4. The remark made by caveatrix in her testimony: "I did not know that W. was the first, and probably by far the largest legatee in the will," was not admissible to prove that W. was such a. legatee, but it was competent for her to give it as a reason, and for what it was worth, as such, why she had changed her purpose, as indicated by former declarations of hers; not to contest the will.

5. On the trial of an issue of *devisavit vel non*, the admission of an executor before qualification is admissible to impeach the will, when such admission is in reference to the conduct or acts of the executor as to some matter relevant to the issue.

6. Parol evidence of the declarations of a testator, expressing dissatisfaction with his will, and made shortly after its execution, such as "I have done something I ought not to have done; I have made my will, and did not make it as I wanted to; I know I did wrong, but I could not help it. Lord God Almighty, who ever heard of such a will, but I can't change it," is admissible, not to prove the fact that fraud was practiced upon him, or that undue influence was actually exercised, but as tending to show the state of testator's mind, and that he was in a condition to be easily influenced.

7. There having been illegal testimony admitted upon the point of undue influence, and the verdict setting aside the will having been rendered by the jury especially upon that ground, and a new trial having been granted by the judge who tried the case, we think it proper that all the issues presented in the case should be submitted to another investigation.

Wills. Witness. Opinions. Evidence. Admissions. Administrators and executors. Declarations. New trial. Before Judge JAMES JOHNSON. Talbot Superior Court. September Term, 1873.

Virginia Dennis, wife of William T. Dennis, petitioned the Court of Ordinary of Talbot county, setting forth that she was the daughter of William Stallings, deceased; that William J. Weekes produced before said court, in December, 1869, an instrument in writing purporting to be the last will and testament of said Stallings, which paper was admitted to record in common form; that said Weekes claims to be the executor under said instrument, and has taken possession of the estate. Prays that an order may issue requiring said Weekes to probate the same in solemn form.

Upon the usual proceedings being had to bring all the par-

ties at interest before the court, Virginia Dennis and her husband filed the following caveat:

1st. That the paper propounded for probate by William J. Weekes, as the last will of William Stallings, is not his will, because when he signed said paper he was incompetent, from insanity and mental imbecility, to make a will.

2d. That he did not make said paper as his last will freely and voluntarily, but made the same in consequence of the undue influence and constraint which the said Weekes exercised over him.

3d. That the said Weekes did, by fraud and deceit, and fraudulent and false representations, procure the said Stallings to make said will.

4th. That the said Weekes used fraudulent practices upon the fears, affections and sympathies of the said Stallings, and thereby procured him to sign said paper as his will.

The case was carried to the Superior Court by appeal. Upon the trial there had, the evidence was voluminous, and as every question of law made is presented in the motion for a new trial, it is deemed best not to encumber the case with so much useless matter.

The jury returned the following verdict:

"We, the jury, find the paper exhibited to us not to be the will of William Stallings through undue influence."

The propounder moved for a new trial upon the following grounds, to-wit:

1st. Because the court erred in admitting the following testimony of William Peek: "From the facts stated, in his opinion, William Stallings was beyond question an insane man." "The last time he saw Stallings, his mind was lost and insane; Stallings was in a condition to be easily influenced the last time he saw him." "When he last saw Stallings, he seemed to be under the influence of Weekes altogether; he cannot say what the precise extent of Weekes' influence was, though he seemed to be obedient to the commands of Weekes."

2d. Because the court erred in admitting the following testimony of the caveatrix, Virginia Dennis: "My father was a

Dennis and wife *vs.* Weekes.

person of unsound mind. I did not know that Mr. Weekes was the first and probably by far the largest legatee in the will." "Weekes said that if that will was broken, they might carry him to the gallows the day after it was done." "Mr. Weekes told me he had my father to make the will in order to protect my father's estate from a third party, Nancy Stallings' illegitimate child."

3d. Because the court erred in admitting the following testimony of Ellen Hill: "At the supper table he sat down and did not eat anything. I said to him, 'Mass Billy, why don't you eat?' He said, 'I have done something this evening I ought not to have done; I have made my will, and did not make it as I wanted to.'" "Mr. Persons came over to see Mr. Stallings. He asked Mr. Persons what was in the will? When told, he said, 'Lord God Almighty, who ever heard of such a will, but I can't change it. I know I did wrong; I could not help it.' I heard him tell Mr. Persons to get it and to tear it up."

4th. Because the verdict is contrary to evidence, law and the charge of the court.

The verdict was set aside and a new trial ordered; whereupon caveatrix and her husband excepted.

HENRY L. BENNING; WILLIS & WILLIS; W. B. HILL, for plaintiffs in error.

E. H. WORRILL; M. H. BLANDFORD, for defendant.

TRIPPE, Judge.

1. It was not denied in the argument that a witness may give his opinion of the sanity of a testator, and indeed on any other question to be decided by the jury, and which is one of opinion, provided he gives his reasons therefor: Code, section 3867.

2. Under this rule, a portion of the testimony of the witness Peek, which was objected to, was admissible, and part not. He states how the testator appeared and acted, the last time

he saw him; describes his manners and conversation, and then gives "his opinion from the facts stated." Mrs. Dennis (the caveatrix) is still more full and explicit in stating the facts on which her opinion of the insanity of her father is founded.

3. But when the former witness (Peek) says "he was in a condition to be easily influenced," he is giving a conclusion of his mind growing out of the opinion he had already expressed, and does not offer any facts illustrating the matter of his being easily influenced. This statement of the witness bears upon the issue made of undue influence. Insanity and unsoundness of mind, is one thing, undue influence quite another. So, when the same witness says that the testator "seemed to be altogether under the influence of Weekes, he cannot say what the full extent of Weekes' influence over Stallings was, though Stallings seemed to be obedient to the command of Weekes," he should have given the facts on which these statements were based. He recites none; no act of Weekes showing power or control; no yielding on the part of Stallings to a command or even wish of Weekes, exhibiting submissiveness. It is a general statement of how matters "seemed," as to the relation between the parties he was referring to, without a single act or fact illustrating it, or furnishing a foundation for his impression. He does say he negotiated with Weekes, who professed to be acting as the agent of Stallings, for the purchase of a plantation belonging to testator, but sets forth nothing in the negotiation or otherwise, manifesting power or control on the part of Weekes, or the "obedience" of Stallings to him.

4. Another exception to the testimony was, the admission of the remark made by Mrs. Dennis, that "she did not know that Weekes was the first and probably by far the largest legatee in the will." Although this may not have been competent to prove that the executor was such a legatee as described by the witness, yet, it was admissible in another view and for another purpose. Mrs. Dennis was the caveatrix. She had just admitted that under certain information given her by the executor, as to disposition of the property by the will, she had

once told him "if that was true, she was satisfied." It was also in proof by a witness for the propounder, that she had, just after the death of her father, "expressed herself as satisfied," meaning with the will. It is true, this went in after her testimony was objected to, and admitted. But in passing on the competency of testimony courts will look at the whole record. The witness, then, by her own admission (without considering the subsequent testimony on that point) stood as one contesting that with which she had on a former occasion said she was satisfied. It was competent for the propounder to prove she had so said. Unexplained, it would have put upon her the burden of having taken two conflicting positions, at one time approving the will, and now contesting it in court. She should have been allowed to explain this, and to have given her reason to be considered for what it was worth, as such, why she had changed her former purpose. Moreover, it was claimed on the trial by her that the executor was, in fact, a large beneficiary under the will, and evidence on that point, *pro* and *con* submitted. It was a material question, strongly urged, and strongly denied. It rested largely on facts outside of the will. The caveatrix did not at the time she refers to, (when the admission was made,) know how the property was disposed of by the will, except from what the executor told her. Such, at least, is the import of her testimony. She certainly had the right for the purpose of explanation, to give the reason she did for the change in her intention as to caveating the will. The whole of it amounts to about this. She admits she at one time was satisfied, and so said, but that was because she was mistaken and was misled by the executor. She has since changed her purpose because the executor is "probably the largest legatee in the will." She sets up that fact as one point also in the attack on the will. If the remark she made which is objected to, cannot establish that fact, it can at least go for what it may be worth, as explanatory of her own action, which action of hers, was set up against her by the propounder on the trial.

5. The next objection was to the admission of the testimony

of Mrs. Dennis, that Weekes, the executor and propounder, had said to her "that he had my father, the testator, to make the will to protect his estate from the illegitimate child of Nancy Stallings, idiot daughter of testator." The ground on which this objection was put in the argument was, that the admissions of an executor are not competent evidence on the issues made, unless he is also a legatee, or took a benefit under the will, and that there was no evidence that either was true in this case. The cases cited by counsel for defendant in error, who was the movant for a new trial in the court below, and which was granted, do all seem to rest the admissibility of such testimony on the ground that the executor and propounder was also a legatee : 12 *Georgia*, 75 ; 14 *Ibid.*, 308 ; and also in this same case, (for it has been here before;) 46 *Ibid.*, 514. Without impeaching this rule, and in strict compliance with it, were not the admissions of this executor properly given to the jury. As has been already stated, the caveatrix claimed that he was a large beneficiary by the will, and introduced testimony to prove it. Counsel for Weekes stated, in his brief, that "whether Weekes took anything under the will depended on the fact whether he was indebted to Stallings at the time the will was written." This is unquestionably true. Counsel further says, which is also true, "to prove that he was a legatee, caveatrix undertook to show that Weekes was indebted to Stallings." And after citing the testimony on this point, to-wit: the amount of notes he held belonging to Stallings, the crops that went into his hands, the interest he made, and then what he accounted for, says : "This evidence would show a considerable deficit;" that is, would show a considerable indebtedness on the part of Weekes. And so it would. This was the *status* of the testimony when the admissions of Weekes were proven. Were they not properly admissible under the rule, as it is claimed to be by the movant for the new trial ? But it is said that Weekes accounted, in his testimony, for all this, and showed that instead of his being indebted to the estate, it was really indebted to him. Granting that he did testify to all this, the

evidence objected to was already in and properly in. The fact that Weekes claimed that by his testimony he had explained what had been testified to against him, and had relieved himself from it, did not affect the *competency* of evidence already before the jury. The court could not have anticipated the explanation and rejected the admissions, nor could it, after Weekes had testified, have pronounced that it was satisfactory to show he was not a beneficiary under the will, and then have withdrawn the admissions. A recovery cannot be had on a note which is on its face barred by the statute of limitations, unless a promise to pay it in writing, or a written acknowledgment, is proved, or a credit thereon entered by the maker, or signed by him. Suppose, in a suit on such a note, the plaintiff tenders the necessary acknowledgment in writing, and proves by a witness that he knows the defendant's handwriting, and believes the paper tendered is his writing. It is at once admitted. The defendant may swear that he did not write the paper, and introduce witnesses who say it is not in his handwriting. The court could not, on that testimony, withdraw the paper or non-suit the plaintiff. The case, with all the testimony, would be submitted to the jury. Section 2437, Code, says: "On the investigation of an issue of *devisavit vel non*, the admission of an executor, before qualification, or of a legatee, (unless the sole legatee,) shall not be admissible in evidence to impeach the will, except the admission be in reference to the conduct or acts of the executor or legatee himself as to some matter relevant to the issue." Does this mean that if the admission be in reference to the conduct or acts of the executor himself as to some matter relevant to the issue, it is admissible, independent of the fact whether or not he is a legatee or takes a benefit under the will? But outside of such a construction of this provision of the Code, and for the reasons given, the testimony was properly admitted and a new trial should not have been granted on that ground.

6. Another ground taken in the motion for a new trial was that the court erred in admitting the testimony of the witness, Ellen Hill, proving certain declarations of the testator. These

were made the night after the execution of the will in the
afternoon and the ensuing morning. These declarations, as
proved, were, "I have done something I ought not to have
done; I have made my will and did not make it as I wanted
to; I know I did wrong, but I could not help it; Lord God
Almighty, who ever heard of such a will? but I can't change
it," with other strong expressions, one of which was telling a
friend to "get the will and tear it up." The witness stated
that some of these exclamations were made that night at the
supper table. That he would not eat; that he walked the
floor nearly all night, saying, "I have done wrong; I have
done wrong; I am a ruined man." Was not this proof admis-
sible? The grounds of caveat were mental incapacity, and
fraud and undue influence on the part of the executor. These
sayings of the testator do not refer to the executor or to any
thing that he had done, nor does he (testator) complain of his
fraud or influence of any sort, or that of any one else. He
does not complain of any wrong having been done him. But
if they were not admissible to prove the fact that fraud had
been practiced upon the testator, or that undue influence was
actually exercised, they tended to show the state of his mind
and that he was in a condition to be easily influenced. Any
evidence throwing light upon that point was competent. The
question of the soundness of mind of the testator, his sanity,
on that day, was in issue. Witnesses on both sides had testi-
fied on the point, some affirmatively, others denying his un-
soundness. His firmness of mind and strength of will had
also been referred to in the testimony. Would not this evi-
dence, if accepted and credited, tend, with some force, to illus-
trate the issue? Would they not look somewhat like the
ravings of a crazy man, who thought he was helpless? Tak-
ing into consideration the time when these declarations were
made and all the facts connected with them, as detailed by the
witness, they were admissible as exhibiting the condition of
testator's mind and that it was such that he might easily have
been influenced to do what he did not approve of. With this
view, it is unnecessary to review the authorities referred to in

the argument.   As stated by Judge LUMPKIN, in *Williamson vs. Nabers*, 14 *Georgia*, 308, "the principle asserted in them applies to declarations as to the intentions of the testator or to proof of fraud or some such matter and does not conflict with our decision on this point."   He had previously said "such evidence (the declarations of a testator) is proper to assail such capacity (testamentary) or to afford presumption of undue influence."   There was then no error in admitting the testimony complained of in this ground and the new trial should not have been granted for that cause.

7. The judgment of the court below granting the new trial does not give the ground upon which it was placed.   This court has often held that it is less inclined to interfere with the action of the judges of the superior courts where a new trial is granted, than when it is refused.   They are specially authorized to grant new trials when any material evidence has been illegally admitted against the demand of the applicant : Code, section 3714.   We have said we think a portion of the testimony of the witness Peek was illegal.   It was upon the point of the influence of the executor over the testator.   The verdict setting aside the will recites that it was rendered on that ground.   The judge who tried the case thought there should be a new investigation, and if there be anything that can reasonably sustain a judgment granting a new trial, this court will not say that the judge who so pronounces abused his discretion.   It is better that all the issues presented in the case be submitted to another jury.

Judgment affirmed.