### GINN *et al.,* executors, *v.* GINN *et al.*

FISH, C. J. 1. Where it was in issue whether an instrument offered for probate as a will in solemn form was genuine or was a forgery, and a number of papers purporting to bear the genuine signature of the alleged testator were offered on behalf of the caveators, and there was testimony that some of them were signed by the testator, an objection to them as a whole on the ground that none of them were proved to be the genuine handwriting of the alleged testator was not good.

2. Where on the trial of such an issue it was sought to prove or disprove the genuineness of the signature to the instrument by introducing in evidence other signatures of the alleged testator, proved or acknowledged to be genuine, for comparison with that attached to the alleged will, it was necessary, under the Civil Code (1910), § 5836, that such new papers, when intended to be introduced, should be submitted to the opposite party before he announced ready for trial.

3. Where the only probative value of other writings thus sought to be introduced was that they might be compared with the writing in issue in order to throw light upon its genuineness, the requirement of the statute above stated did not become inoperative because two of the witnesses to the will had testified to the genuineness of the signature of the testator and to that of a deceased witness. The other writings did not become admissible under the name of impeaching evidence, the witness referred to as thus impeached having given no testimony in regard to such writings or signatures, and the only impeachment which would arise from their introduction being by affirmatively proving one fact and thus disproving another.

(*a*) There is no conflict between this ruling and those in which it has been held that where a paper is admissible in evidence as throwing light on the transaction and not merely on the subject of handwriting, or where it could be legitimately used in cross-examining a witness in regard to his testimony given in chief, it does not have to be proffered to the opposite party before the latter announces ready for trial, in order to be thus used.

4. The instrument which was offered for probate as a will provided for a life-estate for the wife of the alleged testator, for certain small legacies in money, and for the remainder, after the death of the life-tenant, to go to certain relatives of the testator. The testator had been twice married. If he died intestate, his wife, who survived him, was his sole heir; and she having died intestate, the property, amounting to about $12,000 in value, would pass by inheritance to her heirs, and the relatives of her husband would take nothing. No will was produced until after her death, when that now under consideration was sought to be propounded. It was attacked on the ground that it was a forgery. The caveators sought to show that it had been dated back before the death of the wife of the alleged testator, that two witnesses had been procured to sign it, and that the name of the third, who was dead, had been forged to it. Evidence was admitted tending to show that, after the death of the wife of the alleged testator, two of the legatees under the will, who would receive large legacies if it were established, at different times made admissions to the effect that there was no will. but that it was

necessary to make one in order that they might obtain the estate, and that they had procured two witnesses who would sign a will and were looking for a third; and also that they discussed with witnesses the question of who would be a proper person thus to obtain, and that one or both of them offered money to obtain such false witnesses. Civil Code (1910), § 3870, declares: "On the investigation of an issue of devisavit vel non, the admission of an executor before qualification, or of a legatee (unless the sole legatee), shall not be admissible in evidence to impeach the will, except the admission be in reference to the conduct or acts of the executor or legatee himself, as to some matter relevant to the issue." The admissions introduced in evidence were in reference to the conduct and acts of legatees in regard to a will to be made after the death of the alleged testator and to procuring attesting witnesses for such a forged instrument. Such conduct was of the utmost relevancy, and dealt with the acts of the persons whose statements and admissions on that subject were shown. This was competent evidence. *Harvey* v. *Anderson*, 12 *Ga.* 69, 73 et seq.; *Williamson* v. *Nabers*, 14 *Ga.* 286; *Jackson* v. *Jackson*, 32 *Ga.* 325 (2); *Dennis* v. *Weekes*, 46 *Ga.* 514, s. c. 51 *Ga.* 24 (5).

5. The testimony of a witness was admitted over objection, as follows: "I got a letter from Mr. Alex. Johnson, in regard to this estate. The letter has been torn up. There was an offer made me in that letter. That letter came through the mail, and I burned it up. It was signed Alex. Johnson. I don't know as I would know his handwriting. I don't remember whether it was written on a typewriter. There was an offer made to me in that letter. It was on his letterhead. I don't remember whether there was anything printed on the outside or not. He just wanted me to give him half of my part of the estate. He said all the others had signed it. Mr. Ginn came over there and told me he signed it." The objection was that the evidence was irrelevant, and that the foundation had not been sufficiently laid to admit the letter or the contents thereof. *Held*, that, as it was proved that the letter had been burned, a sufficient foundation was laid for the admission of secondary evidence as to its contents, if the letter itself would have been admissible.

(a) The evidence above set out did not sufficiently show the writing of the letter by Mr. Johnson to authorize the admission in evidence of it or its contents, over objection on that ground.

(b) In the uncertain state of the evidence on the subject of the contents of this letter and what appeared to have been an enclosure contained in it, both as to the time when it was written and the subject-matter of the proposed contract or paper which the witness said she refused to sign, its relevancy does not appear. If there had been evidence tending to show that the writer was connected with the alleged fraud or forgery of the writing propounded as a will, and if the letter and the proposed contract had been shown to be connected with that subject, the letter might have been admissible, if the evidence tended to show that it was written or sent by the purported writer; but the statements of this witness were so vague and general that the relevancy of the letter was left in uncertainty, and her testimony relating thereto should have been excluded.                 *Judgment reversed. All the Justices concur.*
                    SEPTEMBER 19, 1914.

Probate of will.  Before Judge Meadow.  Madison superior court. January 30, 1913.

*Alexander Johnson, Worley Adams,* and *James H. & Parke Skelton,* for plaintiffs in error.  *Berry T. Moseley, Dorough & Adams, Samuel B. Swilling,* and *Worley & Nall,* contra.