## COCROFT *v.* COCROFT.

1. The evidence was insufficient to prove the handwriting of the letter referred to in the first division of the opinion, or to prove its authenticity. Consequently it was erroneous to admit the letter in evidence.
2. For similar reasons it was erroneous to admit in evidence the hotel register referred to in the second division.
3. In a suit for divorce on the ground of adultery, an incriminatory admission made by one spouse to the other in the known presence of a third person is not confidential or privileged, and the third person in whose presence the admission was made may testify to such admission on the trial of a divorce case between the parties.
4. In a suit of the character mentioned in the preceding note, a letter written to the defendant by an alleged paramour, which was not shown to have been in response to a letter or other invitation of the defendant, but which was intercepted by the plaintiff and was never received or read by the defendant, is inadmissible against the defendant on the trial.
5. It was erroneous, under the facts of this case, to charge the jury: "If you believe and find from the evidence adduced upon the trial that the defendant, Mrs. Nellie Cocroft, had evidence in her power by which she might have repelled or disproved any of the charges against her and she failed to produce to you such evidence within her power, then and there a presumption arises against her that the charge or charges against her which she might have so repelled, but did not, are well founded. This presumption, however, might be rebutted by evidence."
6. As the evidence may not be the same on the next trial, no ruling will be made as to the sufficiency of the evidence to support the verdict for the plaintiff.

Nos. 4039, 4040. SEPTEMBER 2, 1924. REHEARING DENIED SEPTEMBER 20, 1924.

Divorce. Before Judge W. E. Thomas. Thomas superior court. October 16, 1923.

*Titus & Dekle,* for plaintiff in error in main bill.

*J. E. Craigmiles* and *C. E. Hay,* contra.

ATKINSON, J. C. C. Cocroft instituted an action for divorce against his wife, Nellie Cocroft, in Thomas County, the county in which the parties resided. The petition as amended was solely on the ground of adultery. Adulteries were alleged with several differ-

ent men. One of the men was H. L. Kemp, with whom it was alleged the offense was committed on July 29th, 1921, in the City of Atlanta, Georgia, and again on August 28th, 1921, in Albany, Georgia, as well as at other times and places to the petitioner unknown. Another of the men was John T. Suthers, with whom it was alleged the offense was committed on the nights of June 10th and 11th, 1922, in the City of Atlanta and at other times before and since those dates. The material allegations of the petition were denied. On the trial the evidence offered by the plaintiff and relied on to prove the charges of adultery was entirely circumstantial. One of the witnesses examined by the plaintiff was the man Kemp. The defendant did not testify nor did she introduce any evidence. The jury returned a first verdict for the plaintiff. The defendant made a motion for a new trial, on the usual general grounds, which was subsequently amended so as to complain of the charge of the court and of certain rulings on the admission of evidence. A new trial was refused, and the movant excepted. After the bill of exceptions was certified the defendant in error obtained a cross-bill of exceptions in which error was assigned on rulings of the court rejecting from evidence certain testimony and a certain letter that was offered by the plaintiff, all of which was fully set forth in exceptions pendente lite that were duly certified.

1. The plaintiff introduced in evidence the following telegrams: (a) "Thomasville, Ga., June 2, 1922. Mr. J. T. Suthers, Humbolt Hotel, Humbolt, Tenn. When did you write. Nothing since Sheffield. Wire Saturday Morning. Nell." (b) "Trenton, Tenn. 840A. June 3, 1922. Mrs. C. C. Cocroft, Love St., Thomasville, Ga. Paris and Paducah since Sheffield. Am writing to-day." (c) "June 8, 1922. Moultrie, Ga. To Mr. John T. Suthers, Hermitage Hotel, Nashville, Tenn. In car. Dempsey tonight. Piedmont Friday night. Wire me Macon. Nell." (d) "June 8, 1922. Nashville, Tenn. Mrs. C. C. Cocroft, Dempsey Hotel, Macon, Ga. Your wire here will arrive Saturday evening Dixie. Writing Atlanta. John."

The plaintiff also introduced evidence to the effect that the defendant had a box in the post-office at Thomasville, Georgia, designated as box No. 604; that plaintiff had in his possession at his store a letter written and addressed on the stationery of the

"Hotel Caldwell," of Paris, Tennessee; that the envelope bore a stamp which so far as legible was "Paducah & —— May 28, 1922;" that the letter was addressed "Box # 604, Thomasville, Georgia;" that the letter did not reach the hands of the defendant, and was never seen by her. The plaintiff also introduced in evidence the register of the Hotel Winecoff in the City of Atlanta, on which was the entry "Jno. T. Suthers & wife, Roanoke, Va.;" also testimony of H. G. Calloway, a hotel clerk as follows: "These two sheets and three pages contain names of all guests who registered at the Winecoff under date of June 10, 1922. The last entry on the second page is, 'John T. Suthers and wife, Roanoke, Va., Room 718.' I did not see the woman who occupied the room 718 on that occasion with John T. Suthers. I was not on duty at the time John T. Suthers registered there. Mr. Billingsly was on duty at that time. I did not see Mrs. Cocroft there on the 10th of June nor on the 11th of June that I know of, and I could not say for sure that I saw her there on the 12th of June. If I saw her at anytime of June this year 1922, I don't remember it. I don't know if I saw the guest who occupied room 718 under this entry 'John T. Suthers & wife,' and I cannot say whether it was or was not Mrs. Cocroft who registered there as Mrs. Suthers." Billingsly, referred to in the above-quoted testimony, was not examined as a witness. There was other testimony to the effect that Suthers and Mrs. Cocroft were seen together at the Hotel Winecoff on the 11th of June, and that they drove alone to the depot when he left the city, and at the parting they kissed and embraced each other. In connection with all the foregoing the plaintiff introduced the letter that bore the address "Box # 604, Thomasville, Georgia." The letter was:

"Paris, Tennessee, Sunday noon.

"Dear: Yours rec'd at Jackson yesterday, and was sure glad to hear from you. Those pictures were real good, and much appreciated. I wonder if that one to have and to hold could be reproduced at some future time? If it could be, it sure would be a most wonderful experience. Well I have been traveling via Ford all week, and expect to continue this method for the next eight days. I expect to reach Nash. about the 10th, and will make out a new route there which will carry me through Ky. into Va. My suggestion was for you to go to N. C. via Atlanta and

Chattanooga, if this latter town would not be too much out of
your way. Then you could see Lookout mountain for a couple of
days. They sell tourist tickets to N. C. via Chattanooga, allow-
ing a stop over in Chattanooga. Now if you plan the trip this
route as suggested let me know in time to arrange my route as
near to Chattanooga as possible, or if you plan to not come any
further than Atlanta I'll arrange to make it there from Nash.
Figure to make either Atlanta or Chattanooga around June 15th,
because I will not delay longer than this date in being in Nash.
Write me next to Palmer Hotel, Paducah, Ky., and after that
Hermitage Hotel, Nash. In the meantime I may give you an
address between these two, but hardly think so, as I'll be in this
car and will not have any definite route made till after leaving
Nash. I am crazy to see you, and can hardly wait for the time
to roll around. Will write again in the next few days. Best Love,
The same."

The letter was admitted over the objections: (a) "That it did
not appear that the said unsigned letter was in the handwriting of
John T. Suthers, and that there was no proof that John T. Suthers
wrote such letter." (b) "Because proof showed that the said letter
came from the possession, custody, and control of the husband,
and that the wife had never received nor seen it, and therefore as
to her it was hearsay evidence." The admission of the letter is
made one of the grounds of the motion for a new trial. The letter
was admitted as a circumstance tending to prove the charge of
adultery with John T. Suthers. No witness testified that the
letter was in the handwriting of Suthers, or that he was seen to
write it, or that he or the defendant admitted its genuineness.
The only writing that was offered as his to prove genuineness of
the letter by comparison of handwriting was the registry of names
at the hotel, which was not itself proved to be in his handwriting.
Callaway, the hotel clerk, who testified about the registry, was not
on duty at the time, and did not pretend to testify that he saw
Suthers sign the registry or that he knew Suthers' writing and
the name was signed in his handwriting. Another clerk, Mr. Bill-
ingsly, was on duty at the time of the registry, but he did not
testify as a witness in the case. In these circumstances the hand-
writing of the letter could not be proved by comparison with the
signature on the hotel registry. There was no other evidence as

to handwriting of Suthers. Authenticity of the letter could have been shown by circumstantial evidence without resort to the handwriting of the purported author; but the evidence in this case was insufficient for that purpose. See *Freeman* v. *Brewster,* 93 *Ga.* 648 (6) (21 S. E. 165) ; *Campbell* v. *State, 123 Ga.* 533 (4) (51 S. E. 644) ; *Kent* v. *Wadley Southern Railway Co., 136 Ga.* 857, 859 (72 S. E. 413) ; *Ginn* v. *Ginn, 142 Ga.* 420 (5, a) (83 S. E. 118). As the letter was not shown to have been the letter of Suthers, even if a letter of that character addressed to the defendant, but not read by her, would have been admissible against her, the letter that was admitted was not admissible.

2. The hotel register was admitted on the question of comparison of handwriting, over the objections "that it was not proven that the said signature was the genuine signature or handwriting of John T. Suthers, or that movant was present at the time said entry was made on said register or had any knowledge thereof, and that therefore as to movant the said entry was hearsay evidence, and that movant was in no way bound thereby." The admission of this evidence was made another ground of the motion for a new trial. Sufficient has been said in the first division to show that the hotel registry was also inadmissible. It was admitted "for the purpose of comparison of handwriting," but as it was not shown to be in the handwriting of Suthers it could not serve to prove the handwriting of the letter which it was offered to prove, nor would it be proof that the defendant was registered as the wife of Suthers.

3. Error is assigned in the cross-bill of exceptions on rulings of the court in rejecting the testimony of three witnesses who, if permitted to answer questions propounded to them, would have testified substantially that on June 13th, at Thomasville, Georgia, while in the presence of the witnesses, such presence being known to both plaintiff and defendant, the defendant on being confronted by the husband with a narration of her movements in Atlanta, freely and voluntarily admitted to her husband that she spent the nights of June 10th and 11th with John T. Suthers in his bedroom at the Winecoff Hotel in the City of Atlanta. The testimony was rejected on the ground that the admission of the wife amounted to a privileged communication between husband and wife, under the provisions of the Civil Code, § 5785. That section provides:

"There are certain admissions and communications excluded from public policy. Among these are—1. Communications between husband and wife. 2. Between attorney or counsel and client. 3. Among grand jurors. 4. Secrets of State." It will be perceived that the same rule that applies to communications between husband and wife also applies to communications between attorney and client. With reference to communications between attorney and client it has been held: "When a client makes to his attorney a communication or statement in the presence of the opposite party as to the transaction in hand, it is not confidential or privileged, and the attorney is a competent witness to testify respecting the same on the trial of a case arising out of such transaction, between the administrator of the client and the other party." *Stone* v. *Minter,* 111 *Ga.* 45 (36 S. E. 321, 50 L. R. A. 356). In *Knight* v. *State,* 114 *Ga.* 48 (39 S. E. 928, 88 Am. St. R. 17), the code provision was construed. It was there said: "But the meaning of this provision simply is that neither of the married pair will be permitted to testify as a witness concerning such communications, or to furnish to another, for the purpose of being introduced in evidence, writings of any kind received under the seal of confidence during coverture. This section of our code was not intended to forbid one who overhears a conversation between husband and wife from testifying with respect to the same. If they are unsuccessful in keeping secret that which they intend each other shall so regard, the mere fact that they did so intend will not render incompetent the testimony of an outsider. See, in this connection, 19 Am. & Eng. Enc. Law, 154; 1 Whart. Ev. (3d ed.) § 427; 1 Gr. Ev. (16th ed.) § 254, p. 392. The wife was not, in the present instance, competent to testify for or against her husband. Penal Code, § 1011, par. 4. But an admission of an incriminating nature made by the husband to and in the presence of the wife, in response to something said by her to him, was certainly relevant, and any stranger who overheard the conversation was competent to testify in regard thereto." See also *Joiner* v. *State,* 119 *Ga.* 315 (46 S. E. 412); *Williams* v. *State,* 139 *Ga.* 591 (77 S. E. 818); *Hudson* v. *State,* 153 *Ga.* 695 (113 S. E. 519). The case under consideration is a suit for divorce on the ground of adultery, but no reason exists why the above-stated rule should not apply in this case as in the cases from which the foregoing

excerpts were taken. While in divorce cases judgments may not be taken by default (Civil Code of 1910, §§ 2559, 5658), admissions and confessions of the parties are not altogether outlawed. Indeed it is declared in § 2949: "The confessions of a party to acts of adultery or cruel treatment should be received with great caution, and if unsupported by corroborating circumstances, and made with a view to be evidence in the cause, should not be deemed sufficient to grant a divorce," and it has been held: "Confessions of parties against themselves are admissible in a libel for a divorce, when there is no suspicion of collusion." *Johns* v. *Johns*, 29 *Ga.* 718 (2). In the light of what has been said, it was erroneous to exclude the testimony of the witnesses as to admissions of the respondent.

4. Error was also assigned, in the cross-bill of exceptions, on a ruling of the court rejecting from evidence a certain letter and the envelope in which it was contained, which was postmarked "Thomasville, Georgia, August 25, 1921," addressed to "Mrs. C. C. Cocroft, Madison, Georgia, General Delivery," and appeared to have been forwarded from Madison back to Thomasville, and there intercepted by a clerk in the store of Mr. Cocroft and retained by him. The letter was offered as the letter of H. L. Kemp, as tending to prove a circumstance to be considered in connection with certain telegrams between the parties, and other testimony relied on by the plaintiff to establish the charge of adultery with H. L. Kemp. The letter was not in response to either of the telegrams, nor did it appear that the defendant had ever received or read the letter. In Wilson *v.* Mitchell, 48 Colo. 454 (111 Pac. 21, 30 L. R. A. (N. S.) 507), it was held: "A letter written to a party to a suit is not admissible in evidence against him if it was never received by him, and has never been in his possession." The case of Razor *v.* Razor, 149 Ill. 621 (36 N. E. 963), was a suit by a wife against the husband for separate maintenance while the parties were living in a state of separation. The husband filed a cross-bill praying for a divorce on account of alleged adultery of the wife. One question was as to admissibility of a letter. It was held that the letter was inadmissible. In the course of the opinion it was said: "It is next insisted that the court erred in excluding from the jury a certain letter alleged to have been found by appellant in his wife's trunk, and containing a proposition to meet her in St.

Louis for improper and adulterous purposes. It was shown that while the letter was addressed to 'Gertie,'—the familiar name of the wife,—on the inside, it was addressed to 'Mrs. Vosburg, Box 99,' on the envelope containing it. It is shown, also, that a considerable package of letters was thus found, some entirely innocent, and others more or less criminating. It is insisted that the letter excluded was one of a series, and in answer to one written by the complainant, and, having been found in the possession of the complainant, was therefore competent evidence. To this it must be said, there is in this record no evidence that it was one of a series, or that it was in answer to one written by complainant, other than that contained in the letter itself. This letter, if addressed to the wife and found in her possession, would not be evidence against her unless the contents had been adopted, or sanctioned by some reply or statement, or act done on her part, shown by proof aliunde the letter itself. · While the possession of letters of this character are wholly inconsistent with the duties and obligations of a wife, it cannot be said that her silence, and retention of the letters, necessarily implies assent to their contents. Where verbal communications are made, silence may authorize an inference of assent; but the same rule does not ordinarily apply to letters received, but never answered or in any way acted upon. (2 Wharton on Evidence, sec. 1154; Commonwealth v. Eastman et al., 1 Cush. 215; Smith v. Shoemaker, 17 Wall. 630)." See also Jones v. Jones, 124 Ill. App. 201 (2); Lorenson v. Lorenson, 155 Ill. App. 35; Mattison v. Mattison, 203 N. Y. 79 (96 N. E. 359); Howard v. Howard, 77 N. J. Eq. 186 (78 Atl. 195). Applying the principle stated in the foregoing decisions, the court did not err, under the facts of the case, in rejecting the letter from evidence.

5. The only remaining assignment of error relates to the charge as complained of in the fourth amended ground of the motion for new trial. In a suit by a husband for divorce on the statutory ground of adultery, the plaintiff introduced a certain incriminatory letter and pages from a hotel register and other correspondence by telegrams between defendant and other men; also testimony of certain witnesses tending to show misconduct·on the part of defendant with such other men. The defendant did not introduce any evidence, and there was no evidence tending to show that the men with whom it was contended the correspondence was had

or the men with whom the misconduct of the defendant occurred resided in the county or that they were under the power and control of the defendant. In these circumstances it was erroneous to charge the jury: "If you believe and find from the evidence adduced upon the trial that the defendant, Mrs. Nellie Cocroft, had evidence in her power by which she might have repelled or disproved any of the charges against her, and she failed to produce to you such evidence within her power, then and there a presumption arises against her that the charge or charges against her which she might have so repelled, but did not, are well founded. This presumption, however, might be rebutted by evidence." The instruction purported to apply a provision which is contained in the Civil Code (1910), § 5749, and Penal Code, § 1015. The language is the same in both Codes, and is as follows: "Where a party has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, or, having more certain and satisfactory evidence in his power, relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim is well founded; but this presumption may be rebutted." In *Fountain* v. *Fuller E. Callaway Co.*, 144 *Ga.* 550 (2) (87 S. E. 651), an action of trover for recovery of certain personal property alleged to have been procured by defendant from plaintiff by fraud, it was held: "There being some evidence to authorize the instruction, the court did not err in charging the jury" in the language of the section just quoted.

In *Anderson* v. *Southern Railway Co.*, 107 *Ga.* 500 (2) (33 S. E. 644), it was held: "Where the petition in an action against a railway company for a homicide alleged that a given person got upon the defendant's train in company with the decedent, and on the trial such person was sworn and called to the witness-stand by the plaintiff, but withdrawn by him without being examined, and there was nothing to show that he was in any way under the power and control of the plaintiff, it was error to charge" in the language of the section just quoted.

In *Central of Georgia Railway Co.* v. *Bernstein*, 113 *Ga.* 175 (5) (38 S. E. 394), it was held: "Where it does not appear that either party has suppressed evidence within his power to produce, it is error to charge the jury as follows: 'It is the duty of parties bringing cases into court, whether plaintiff or defendant, to furnish the

best evidence at their command and to furnish witnesses cognizant of the facts. Parties can explain the reasons for not producing the witnesses; if not explained and not produced, the presumption is that they would not sustain the contention of the party.'" *Thompson* v. *Davitte*, 59 *Ga.* 472 (7); *Brothers* v. *Horne*, 140 *Ga.* 617 (3) (79 S. E. 468). In *Mills* v. *State*, 133 *Ga.* 155 (65 S. E. 368), the history of these code sections was given, and it was held erroneous in a criminal case to instruct the jury in the language of the Code. In the opinion certain reasons by Little, J., employed in a concurring opinion in another case, was quoted and approved as follows: "In the specially concurring opinion of Little, J., he said: 'While presumptions arise under certain proved facts that a criminal charge against the accused is well-founded, such presumption can never arise except upon proved facts; and the principle given to the jury [viz., that stated by the court in his charge, substantially in the language of Penal Code, § 989] is, in my opinion, entirely inapplicable to criminal cases. In effect, it tells the jury that if the defendant had evidence by which he might repel or rebut the charge and failed to introduce it, the presumption then arises that he is guilty. This violates the fundamental principle of criminal law that the guilt of the accused must be shown by competent evidence, before a conviction can be legally had. One accused of crime has a right to stand mute; and unless it affirmatively appears by the evidence that he is guilty, he cannot be legally so held. The presumption of the law is that he is innocent, and this presumption remains until he is proved to be guilty.' We fully concur with the learned Justice in the quoted extract. If the court should deem it necessary to instruct the jury in a criminal case upon the failure of the defendant to produce evidence, he should certainly go no further than to charge that a conscious omission to produce accessible and competent evidence peculiarly within the power of the defendant to produce may be considered by the jury in weighing the testimony, in reaching the conclusion as to whether the defendant's guilt has been established beyond a reasonable doubt. An instruction in the language of Penal Code section 989 is susceptible of being understood by the jury as meaning that if the defendant fails to produce competent, relevant, and material evidence within his reach, his omission to

produce it would afford a presumption of guilt of the crime charged."

Upon reason the above-quoted principle also applies to the defense of a divorce case. In such a case the burden is upon the plaintiff to prove the ground of divorce. It is declared: "No verdict or judgment by default shall ever be taken in a suit for divorce, but the allegations in the petition must be established by evidence before the juries." Civil Code (1910), §§ 2959, 5658. "It shall and may be lawful for the divorced person, or any citizen of said county, to resist the application; and should no person resist the same, then the solicitor-general shall represent the State, with full power to resist the same, as in ordinary divorce cases." § 2967. Moreover in a divorce case against a wife, on the ground of adultery, the wife is an incompetent witness. § 5861; *Anderson* v. *Anderson,* 140 *Ga.* 802 (2) (79 S. E. 1124) ; *Arnold* v. *Arnold,* 141 *Ga.* 158 (3) (80 S. E. 652) ; *Whitehead* v. *Whitehead,* 143 *Ga.* 285 (84 S. E. 580). The charge would be misleading, and incline the jury to treat the omission of the wife to testify in denial of the alleged charges of adultery as an admission of their truth, and to render a verdict on the basis of her silence, rather than upon evidence of the charge of adultery—in effect a verdict for the plaintiff by default. The charge which the court delivered was erroneous first because the law which it purported to apply should not be given in charge in a suit for divorce, and second because there was nothing to show that the defendant withheld from the jury any evidence that was within her power or control.

6. The ruling announced in the sixth headnote does not require elaboration.

*Judgment reversed on the main bill and on the cross-bill of exceptions. All the Justices concur, except*

GILBERT, J., dissenting. Under the evidence in the case John T. Suthers and a woman occupied room 718 in the Winecoff Hotel on the night of June 10th, 1922, and were seen in the hotel the next day. From this evidence the jury would have been authorized, nothing appearing to the contrary, to find that the name "John T. Suthers and wife," written on the hotel register of the date mentioned, was written by John T. Suthers. Accordingly the hotel register with the entry was admissible in evidence. This fact being considered, the court did not err, in my opinion, in admitting the

letter mentioned in the second headnote and corresponding division of the opinion, based on the theory that it was the same handwriting as that upon the hotel register. For these reasons I dissent from the rulings in the first and second headnotes and corresponding divisions of the opinion.